UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LONG KIM HUYNH,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. C26-2976-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Long Kim Huynh ("Petitioner"), a native and citizen of Vietnam, is currently being held in detention at the Northwest ICE Processing Center ("NWIPC") by U.S. Immigration and Citizenship Enforcement ("ICE"). Dkt. 1, ¶ 1; Bloom Decl., ¶¶ 3, 19-20.[1] Through counsel, he filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he challenges the constitutionality of his redetention on August 6, 2026. *Id.* He seeks immediate release from custody and related relief. *Id.* at 14-15.

The Petition is verified by Petitioner. Dkt. 1. Respondents filed a return, Dkt. 6, together with declarations from Peter H. Clark and Ian Bloom. Dkt. 7-8. Petitioner filed a traverse in reply. Dkt. 9.

[1] Declaration of Ian Bloom ("Bloom Decl."). Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth below.

## I. BACKGROUND

Petitioner was admitted to the United States as a refugee in 1988. Bloom Decl., ¶ 4. He obtained lawful permanent resident status in 1989. *Id.* On or about September 4, 1996, he was convicted of possession with intent to distribute heroin and was sentenced to serve 41 months in federal custody. *Id.* ¶ 6. After his conviction, he was placed in immigration removal proceedings, and on July 17, 1998, an Immigration Judge issued a final order that he be removed to Vietnam. *Id.*, ¶¶ 7-8; Dkt. 7-1 at 2 (IJ Order).

On July 29, 1998, U.S. Immigration and Naturalization Service ("INS") took custody of Petitioner when he was released from federal custody on the drug trafficking conviction. Bloom Decl., ¶ 9. Petitioner alleges that INS held him in pre-removal immigration detention in Oakdale, Louisiana, for over one year. Dkt. 1, ¶ 9; *see also* Bloom Decl., ¶¶ 9-18 (reviewing procedural history of Petitioner's bond requests while in INS custody from July 29, 1998, to September 24, 1999).

On September 24, 1999, Petitioner was released on an Order of Supervision ("OSUP") by the INS District Director. Bloom Decl., ¶ 18; Dkt. 7-2 (9/24/99 OSUP). Petitioner speculates that he "was released because there were no diplomatic relations between the United States and Vietnam at the time he was ordered removed," Dkt. 1, ¶ 11, and Respondents confirm that Petitioner was released in 1999 "on an order of supervision because of ICE's inability to obtain a travel document to Vietnam at that time." Dkt. 6 at 2.

Twenty-six years later, on August 6, 2026, Petitioner reported in-person to the ICE Office of Enforcement and Removal Operations ("ERO") per his OSUP requirements and was taken into custody. Bloom Decl., ¶ 19; Dkt. 7-4 (Form I-213).

It is unclear from the briefing if the OSUP was revoked at that time, and Petitioner points to inconsistencies in the record as to the factual basis for revocation. Dkt. 9 at 3. Respondents aver that ERO revoked Petitioner's OSUP on August 6, 2026, after it was "determined that Petitioner's application for a travel document ('TD') was complete." Bloom Decl., ¶ 19. Respondents also concede that "Respondents cannot find evidence of the OSUP revocation." Dkt. 6 at 4, n. 2.

Petitioner asserts that Respondents "provide no evidence that the Vietnamese government knows that Petitioner exists, that they are willing to accept him, or that they have begun the process of issuing travel documents," Dkt. 9, and there is little in the record to controvert this assertion. At the very least, the record shows that Respondents did not contact the Embassy of Vietnam about Petitioner's removal until after he was redetained. Respondents aver that after Petitioner was detained, "[o]n August 18, 2026, ERO submitted a request for a TD from the Embassy of Vietnam and is awaiting a response" as of September 4, 2026. Bloom Decl., ¶ 20. In addition, the Form I-213 in Petitioner's record contains unexplained notations indicating that the TD for an individual named "Tang" was being issued by the Vietnamese Consulate, and that Tang's OSUP was revoked:

> ERO management conducted a custody redetermination review and determined that TANG's travel document application had been completed and that the Vietnamese Consulate was in the process of issuing travel documents.
>
> Based on these findings and follow-up action consistent with the subject's immigration case and release conditions, ERO Management revoked TANG's Order of Supervision (OSUP), Form I-220B.

> Officers escorted HUYNH, Long Kim to a secure holding area, where a search incident to arrest was conducted.

Dkt. 7-4 at 3-4 (Form I-213)(emphasis original). Respondents make no effort to explain why the I-213 only reflects a complete application for Tang, but the declaration asserts that a determination was made regarding a complete travel document application for Petitioner. *See* Dkt. 6 at 4; Bloom Decl., ¶¶ 19-20.

Petitioner asserts that he was provided no pre-deprivation notice of Respondents' intention to revoke his OSUP and no individualized consideration to justify the basis for redetention. Dkt. 1, ¶ 13-14. Respondents do not oppose that assertion. *See* Dkt. 6 at 4; Bloom Decl., ¶¶ 19-20. Petitioner's records do not reflect any criminal history since his release on OSUP in 1999. Dkt. 7-4 (Form I-213). Petitioner alleges that he complied with all conditions of his release for 26 years, and there is no evidence to the contrary. *See* Dkt. 1 at 2.

After being taken into custody, Petitioner filed the instant habeas petition, seeking immediate release and related declaratory and injunctive relief. He requests a declaration that his redetention without first providing an individualized hearing violates the Due Process Clause of the Fifth Amendment and that his ongoing detention is unreasonable in violation of 8 U.S.C. § 1231(a). He also seeks injunctive relief, requesting that the Court enjoin his redetention unless the government provides written notice, a meaningful hearing, and clear and convincing evidence that his removal is significantly likely in the near future. *Id.* at 15. He further seeks injunctive relief in the form of an order prohibiting Respondents from using an ankle monitor or GPS tracking upon his release, as well as attorney's fees under the Equal Access to Justice Act. *Id.*

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner contests the legality of his detention and requests release on two bases. First, Petitioner argues that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process required the government to provide him with notice and individualized consideration before revoking the OSUP on which he was released in 1999. Dkt. 1, ¶¶ 41-45, 54-57. Second, Petitioner asserts that he has been held in detention in excess of six months since his order of removal became final on July 17, 1998, when his recent detention is aggregated with his post-removal detention in 1999. *Id.*, ¶¶ 46-52, 58-61. He argues that under the framework of *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), his removal is not reasonably foreseeable and his detention has become unreasonable in violation of 8 U.S.C. § 1231(a). *Id.*

As to Petitioner's first argument, Respondents emphasize that Petitioner is subject to an administratively final order of removal and that his brief relies on jurisprudence decided in the context of pre-order detention or other regulatory schemes, concluding that "Petitioner is not entitled to a pre-detention hearing in the post-order context." Dkt. 6 at 5-7. Although Respondents acknowledge that "some opinions in this District have found that the Due Process Clause requires a pre-deprivation hearing before revocation of an OSUP[,]" Respondents argue

that the Court should not infer the applicability of this jurisprudence because Petitioner did not explicitly argue its applicability. *Id.* at 6-7. In reply, Petitioner makes an explicit argument that the post-order posture of his case does not affect his constitutional right to due process, citing the applicability of recent decisions of this Court. Dkt. 9 at 2-3.

As to Petitioner's second argument, Respondents argue that under the burden-shifting framework of *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), Petitioner has not borne his initial burden of showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Dkt. 6 at 4 (quoting *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003)).

### A. *Mathews* and Due Process

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332 (omissions added). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). As recognized by the parties, this is true even in the context of individuals such as Petitioner who are subject to final orders of removal. *See*, *e.g.*, *Khim v. Bondi*, 2:25-CV-02383-RSL, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025) (confirming applicability of *E.A.T.-B. v. Wamsley* analysis in context of petitioner with decades-old removal order); *Wana v. Bondi*, 2:25-CV-02321-RSL, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025) (same).

Courts in this district have also found that redetention analogous to Petitioner's violates the Due Process Clause under *Mathews*, and nothing here compels a different result. For example, in the case of a Cambodian citizen with a 1995 removal order, a 1998 OSUP, and a 22-page criminal history, who reported to ICE in August 2025 in accordance with the conditions of his release and was promptly re-detained for four months, the court found that

> the government action at issue here is at the core of the liberty protected by the Due Process Clause, that the risks of erroneous deprivation of liberty are high, and that the government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded that he would not abscond and would not pose a danger to the community.

*Khim*, 2025 WL 3653724, at *4. Indeed, Respondents do not attempt to argue that the *Mathews* factors weigh in their favor here; Respondents merely argue that Petitioner did not argue the applicability of this and similar caselaw when arguing that the manner of his detention violated the Due Process Clause of the Fifth Amendment. Dkt. 6 at 6.

*1. Petitioner had a liberty interest in remaining free.*

Applying the *Mathews* factors to the facts of this case, it is clear that Petitioner had a liberty interest in remaining free. When INS released Petitioner in 1999, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). He lived in the United States for the next 26 years, in apparent compliance with the terms of his OSUP, an action only made possible because of his freedom, the revocation of which was entitled to due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Petitioner's liberty interest in remaining free was unquestionably deprived by his arrest and redetention challenged here. Accordingly, the first factor weighs in Petitioner's favor.

*2. There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live the United States, was re-detained without notice or an opportunity to be heard. There are unexplained inconsistencies in the record suggesting that Petitioner may, in fact, have been erroneously deprived of his liberty interest. In particular, notations about an individual named Tang in Petitioner's record, viewed alongside Respondents' inability to find evidence of either an OSUP revocation or confirmation of the issuance of travel documents for Petitioner, suggest that Petitioner may have been mistakenly or prematurely taken into custody. At the very least, these inconsistencies create a fact question as to Respondents' sole justification for revoking Petitioner's OSUP: confirmation that his

application for a travel document was complete. *See* Bloom Decl., ¶ 19. And these inconsistencies point to the need for further safeguards against erroneous deprivation.

The *Mathews* analysis looks to the risk of an erroneous deprivation of the relevant interest through the governmental procedures used, and the probable value, if any, of additional or substitute safeguards. *Mathews*, 424 U.S. at 335. The circumstances of Petitioner's redetention show there was a high risk of erroneous deprivation and that additional, pre-deprivation process would have been valuable in ensuring such error did not occur. Providing notice and a pre-deprivation hearing would have provided an opportunity for Petitioner to challenge the factual bases for his redetention. This factor weighs in favor of Petitioner.

*3. The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. Again, Respondents do not here address the *Mathews* factors. They, at most, suggest a relevant governmental interest in citing statutory authority that allows detention for a reasonable period of time to effectuate removal from the United States. Dkt. 6 (citing U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. at 689).

The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, Respondents do not articulate an interest advanced by Petitioner's redetention that would have been undermined by first providing pre-deprivation process. Respondents do not identify any evidence supporting a contention that Petitioner posed a flight risk or a danger to the community

that would have arguably justified his redetention without notice. Nor do Respondents argue the law compelled it. *See, e.g.*, 8 U.S.C. § 1226(c)(1). Even where the government believes it has a lawful basis to redetain a noncitizen, it must still "effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

**B. Petitioner's second ground for relief**

Petitioner also alleges his continued detention is indefinite and unreasonable under *Zadvydas*, 533 U.S. at 699. Because the injury alleged on this ground is remedied by the Court's grant of immediate release and because disposition of additional constitutional claims would not materially alter the outcome of this case, the Court declines to reach Petitioner's second argument. *See Tran v. Blanche*, 2:26-CV-01782-GJL, 2026 WL 1998568, at *5 (W.D. Wash. July 10, 2026).

**C. Petitioner's remaining requests for injunctive relief.**

As noted above, Petitioner also seeks permanent injunctive relief barring his redetention or fitting him with any GPS monitoring device during the pendency of his removal proceedings

absent written notice and a hearing before a neutral decisionmaker and clear and convincing evidence that his removal will occur in the near future. Dkt. 1 at 15.

Petitioner has demonstrated his August 6, 2026, redetention was unlawful under the Fifth Amendment. However, Petitioner provides no factual support that he bears individual risk of being unlawfully redetained or fitted with a GPS monitor. *See id*. On the limited record, the Court does not find Petitioner has shown he faces a "cognizable danger of recurrent violation[.]" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). His requests for injunctive relief are therefore denied without prejudice. Nothing prevents Petitioner from seeking habeas relief in the future, should it become necessary.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the amended habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his redetention. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining requests for injunctive relief are DENIED. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 14th day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

///

///